IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VALENTINA GALVIS CORTES and N.A., | ) <br> ) <br> ) |
| Petitioners, | ) <br> ) |
| vs. | )    Case No. 25 C 6293 <br> ) |
| SAM OLSEN, in his official capacity as Chicago Field Office Director for U.S. Immigration and Customs Enforcement, et al., | ) <br> ) <br> ) <br> ) <br> ) |
| Respondents. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Valentina Galvis Cortes, a noncitizen, and N.A., a citizen minor, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging their detention by Immigration and Customs Enforcement. The petitioners filed an amended petition for a writ of habeas corpus on June 18, 2025, asserting four claims for relief: (1) unlawful detention under 8 U.S.C. § 1225(b); (2) unlawful removal under 8 U.S.C. § 1225(b); (3) due process violations related to her detention; and (4) the Equal Access to Justice Act under 28 U.S.C. § 2412. N.A. was released from custody after the petition was filed and no longer seeks relief from the Court.

### Background

Valentina Galvis Cortes is a native of Columbia. She entered the United States with her husband on February 2, 2022. ICE processed her and issued her a Notice to

Appear in standard removal proceedings under 8 U.S.C. 1229a. In January 2023, Galvis Cortes filed a timely application for asylum based on persecution and continued threats posed by the Aguilas Negras, a violent paramilitary group known for targeting individuals who speak out against the group's control or who participate in political and social resistance movements. Galvis Cortes has resided in the United States since she entered the country in 2022. She gave birth to her child, N.A., on October 25, 2024.

The initial master calendar hearing on Galvis Cortes' asylum application was held in immigration court on June 5, 2025. At that hearing, the Department of Homeland Security unexpectedly moved to dismiss the proceedings. Galvis Cortes reserved her right to appeal the dismissal. Immediately after the immigration judge dismissed her removal proceedings, DHS issued an expedited removal order and took Galvis Cortes and N.A. into custody under 8 U.S.C. § 1225(b)(1).

Galvis Cortes filed her initial habeas corpus petition the next day, on June 6, 2025. That same day, another judge of this court, acting as emergency judge, temporarily precluded the removal of Galvis Cortes and N.A. from the United States and from Illinois. Four days later, Galvis Cortes and N.A. were released from the detention center. Galvis Cortes received an Order of Supervision and was placed on electronic monitoring. On June 18, 2025, petitioners filed an amended petition for writ of habeas corpus. This Court has extended the bar against the petitioners' removal on several occasions.

On July 9, 2025, Galvis Cortes appeared for a credible fear interview and was found to have a credible fear of persecution or torture if she returned to Columbia. Following that determination, DHS issued a Notice to Appear for standard removal

proceedings under 8 U.S.C. § 1229a. The Notice to Appear indicated that her expedited removal order under § 1225(b)(1) was terminated. Resps.' Mem. at Ex. 1. Her next master hearing date is scheduled for January 6, 2026.

Galvis Cortes remains in ICE custody, subject to an electronic monitoring device and reporting requirements. Galvis Cortes has not received an individualized custody determination from DHS or a bond hearing before an immigration judge.

## Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates she is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.

Galvis Cortes filed an amended petition for writ of habeas corpus claiming: (1) unlawful detention under § 1225(b); (2) unlawful removal under § 1225(b); and (3) due process violations related to her detention. Her amended petition also requests fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. Galvis Cortes seeks: (1) a declaration that expedited removal does not lawfully apply to her; (2) an order requiring DHS to reinstate her prior removal proceedings; and (3) a bond hearing under 8 U.S.C. § 1226(a).

The government argues that the Court lacks jurisdiction over the DHS decisions that Galvis Cortes challenges. The government also contends that the petition is moot because Galvis Cortes is no longer in expedited removal proceedings.

As discussed below, the Court concludes that it has jurisdiction over Galvis Cortes' petition but that her requests for a declaration that expedited removal does not lawfully apply and an order requiring DHS to reinstate her prior removal proceedings are

3

beyond the scope of the relief available under the habeas corpus statute. The Court grants Galvis Cortes's petition on Count 1 to the extent she seeks an order requiring that she receive a bond hearing under 8 U.S.C. § 1226(a).

**A.      Jurisdiction**

The government argues that two sections of the Immigration and Nationality Act strip the Court of jurisdiction over Galvis Cortes's claims:  8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(g).  Section 1252(a)(2)(B)(ii) states:  "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).  The respondents argue this jurisdictional bar includes § 1225(b)(1)(A)(iii)(I), a provision they contend commits the decision whether to subject certain individuals present in the United States without documentation to "expedited removal" to the "sole and unreviewable discretion" of the Secretary of Homeland Security.

The respondents also argue that § 1252(a)(2)(B)(ii) bars review of the "discretionary decision" to keep Galvis Cortes on electronic monitoring because § 1226(a) states:  "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  The respondents contend that the word "may" in § 1226(a) "triggers § 1252(a)(2)(B)(ii)'s denial of jurisdiction." Resps.' Mem. at 12.

Though the government does not raise the issue, 8 U.S.C. § 1226(e) also provides:  "The Attorney General's discretionary judgment regarding the application of

4

this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The Supreme Court has stated that "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). "But § 1226(e) does not preclude 'challenges [to] the statutory framework that permits [noncitizen's] detention without bail.'" *Id.* This includes challenges to the extent of the government's detention authority under the "statutory framework" as a whole. *Id.* at 295-96.

Galvis Cortes does not seek review of the respondents' exercise of discretion. Instead, she seeks review of the statutory reach of the expedited removal statute, § 1225(b), and the extent of the respondents' authority under the immigration detention statute, § 1226(a). These threshold legal questions are "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Finally, the government argues that § 1252(g) precludes the Court from reviewing the respondents' decision to initiate expedited removal proceedings against Galvis Cortes. Section 1252(g) provides that "notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Seventh Circuit has stated ,however, that § 1252(g) "does not sweep broadly; only challenges to the three

5

listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). A detainee's claims that challenge fundamental legal errors that may violate the detainee's due process rights do not challenge the decision "to commence proceedings, adjudicate cases, or execute removal orders." *Id.*

The Court concludes that it has jurisdiction over Galvis Cortes' claims regarding the scope of the expedited removal statute and whether she is being unlawfully detained.

**B.  Scope of relief**

Galvis Cortes seeks: (1) a declaration that expedited removal does not lawfully apply to her; (2) an order requiring DHS to reinstate her prior removal proceedings; and (3) a bond hearing under § 1226(a). Galvis Cortes' requests for a declaration that expedited removal does not lawfully apply to her and an order requiring DHS to reinstate her prior removal proceedings are beyond the scope of relief the Court may grant under the habeas corpus statute, 28 U.S.C. § 2241. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (stating that "the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement'") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973))). Section 2241 does, however, provide a basis for relief if Galvis Cortes is being unlawfully detained. *Jennings*, 583 U.S. at 290-91. Thus the Court may grant her request for a bond hearing under § 1226(a) if it determines she is being unlawfully detained.

**C.  Mootness**

6

A habeas corpus petition is moot when the Court cannot order any effective relief for the petitioner. *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021). The respondents argue that this case is moot because Galvis Cortes and N.A. are not in custody based on the expedited removal statute, § 1225(b)(1). They assert that Galvis Cortes is now subject to the discretionary forms of detention allowed under § 1226(a). Resps.' Mem. at 2, 9–10. Thus, the respondents say, the case is now moot. Gavis Cortes responds that even though she is now subject to standard removal proceedings, "the unlawful shift to expedited removal continues to restrain her liberty without a statutory basis and causes her ongoing harm through her electronic monitoring and ICE reporting requirements." Pet. Reply at 5.

The respondents do not dispute that Galvis Cortes remains in custody via electronic monitoring. Because Galvis Cortes remains in custody, her petition, in which she seeks a bond hearing, is not moot.

**D.     Basis for detention**

At the October 24, 2025 hearing in the present case, respondents noted that *Matter of Yajure Hurtado*, a decision issued by the Board of Immigration Appeals on September 5, 2025, applies to Galvis Cortes. In that case, the BIA held that § 1225(b)(2) governs the detention of all noncitizens who are subject to removal proceedings, but not on parole, on the basis that they are "seeking admission" for purposes of the detention statutes. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 221 (BIA 2025). Because all noncitizens subject to § 1225(b)(2) must be detained and are ineligible for a bond hearing, the BIA held, "Immigration Judges lack authority to hear bond requests or to grant bond" for these individuals. *Id.* at 225.

7

At least five judges in this district have disagreed with the BIA's new interpretation of § 1225(b)(2). *Maldonado v. Crowley*, No. 25 C 12762, Dkt. No. 16 (N.D. Ill. Oct. 24, 2025) (Daniel, J.); *Miguel v. Noem.*, No. 25 C 11137, 2025 WL 2976480, at *7 (N.D. Ill. Oct. 21, 2025) (Alonso, J.); *G.Z.T. v. Smith*, No. 25 C 12802, Dkt. No. 14 (N.D. Ill. Oct. 21, 2025) (Ellis, J.); *H.G.V.U. v. Smith*, No. 25 C 10931, 2025 WL 2962610, at *5 (N.D. Ill. Oct. 20, 2025) (Coleman, J.); *Ochoa Ochoa* v. *Noem,* No. 25 C 10865, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 16, 2025) (Jenkins, J.). Each of these judges held that § 1226(a) governs detention of noncitizens already in the country because they are no longer "seeking admission" at the border.

In *Miguel*, the court explained that this holding is "consistent with *Jennings*, where the Supreme Court stated that § 1225(b) applies to noncitizens 'seeking admission into the country,' and § 1226(a) applies to noncitizens 'already in the country.'" *Miguel*, 2025 WL 2976480, at *7 (citing *Jennings*, 583 U.S. at 289). Additionally, these decisions were supported by "a longstanding agency practice of providing § 1226(a) bond hearings to noncitizens . . . who were released on recognizance upon entering the United States, placed in standard removal proceedings, and then redetained." *Ochoa Ochoa,* 2025 WL 2938779, at *7; *see also Miguel*, 2025 WL 2976480, at *6. The logic of the immigration system itself also supports the holding that § 1226(a) governs detention of noncitizens already in the country, as they are no longer "seeking admission" at the border. See *Miguel*, 2025 WL 2976480, at *6 ("'our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized

8

additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry.'") (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958))).

The Court agrees; *Yajure Hurtado* is incorrect as a matter of law. Galvis Cortes was released by authorities after she entered the country, placed in standard removal proceedings, and resided in Chicago for over three years before she was detained. She is not "seeking admission" at the border, and thus § 1225(b)(2) does not apply to her. Thus Galvis Cortes is subject only to discretionary detention under § 1226(a).

**E.     Due process**

The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. at 690. The Supreme Court has held that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

Galvis Cortes argues that her detention must comply with the requirements of § 1226(a), meaning that she is eligible for a bond hearing at which the government bears the burden of proving that she is a flight risk or danger to the community. The respondents rely on *DHS v. Thuraissigiam,* 591 U.S. 103 (2020), to argue that Galvis Cortes is entitled only to the processes set forth in the statutes and regulations that are

9

sufficient to satisfy an arriving noncitizen's process rights.[1]

*Thuraissigiam* does not preclude Galvis Cortes's due process claim. In *Thuraissigiam*, the Court explained that a noncitizen "at the threshold of initial entry cannot claim any greater rights under the Due Process Clause" than those provided to her by statute. *Id.* at 107. The respondent in *Thuraissigiam* attempted to enter the country illegally and was apprehended just 25 yards from the border. *Id.* Galvis Cortes, on the other hand, entered the country over three years ago, was processed and released by immigration authorities, and now resides in Chicago with her husband and child.

To determine whether a violation of procedural due process has occurred, courts balance three factors: (1) whether a private interest is implicated by the government action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

The Court concludes that the respondents' detention of Galvis Cortes under § 1226(a) without an individualized determination of her risk of dangerousness or flight violates her right to procedural due process. Galvis Cortes has a private interest in

---

[1] The respondents do not directly argue Galvis Cortes has not satisfied administrative exhaustion requirements but do note that she could request a bond hearing in her immigration proceedings. Judicial discretion governs whether exhaustion should be required in this case. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Because the government now contends that *Yajure Hurtado* applies to Galvis Cortes, any attempt to exhaust administrative remedies by requesting a bond hearing would be futile.

10

release from custody. The respondents' decision to continue to subject her to electronic monitoring creates a substantial risk of erroneously depriving her of that interest. And the government's interest, including any fiscal and administrative burdens, is minimal at best.

Additionally, the respondents have argued repeatedly that Galvis Cortes is now detained under § 1226(a). Resps.' Mem. at 2, 9-10. That statute and related regulations require the government to make an initial determination justifying detention. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *Jennings*, 583 U.S. at 306. Galvis Cortes would then be eligible to request a bond hearing. *Id*. Thus even if Galvis Cortes is entitled only to the processes set forth in the statute, as the respondents contend, she is entitled to an initial determination that detention is necessary and a bond hearing upon request.

Finally, Galvis Cortes argues that, at her bond hearing, the government must establish that she poses a danger or flight risk by clear and convincing evidence. The standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). "The Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020). "The preponderance standard, the Supreme Court has noted, 'creates the risk of increasing the number of individuals erroneously committed' and 'it is at least unclear to what extent, if any, the state's interests are furthered by using [it].'" *Id.* (quoting *Addington,*

441 U.S. at 426). Two judges in this district, in granting immigrant detainees' habeas corpus petitions, have recently recognized that "an 'overwhelming consensus' of courts have placed the burden on the government to prove by clear and convincing evidence that the detainee poses a danger or flight risk" *Ochoa Ochoa,* 2025 WL 2938779, at *8 (quoting *Velasco Lopez*, 978 F.3d at 855 (collecting cases)); *see also G.Z.T.*, No. 25 C 12802, Dkt. No. 14 at 4; *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020).

The Court agrees: "[t]he risk of error from [placing the burden of proof on the noncitizen] is substantial; and the countervailing governmental interest . . . is comparatively slight." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35 (1st Cir. 2021) quoting *Santosky v. Kramer*, 455 U.S. 745, 758 (1982) (alteration in original). At her bond hearing, the government must prove that detention of Galvis Cortes (even via electronic monitoring) is justified by clear and convincing evidence of her dangerousness or flight risk.

## Conclusion

In conclusion, the Court grants, in part, Galvis Cortes' amended petition for writ of habeas corpus [dkt. no. 24]. Unless Galvis Cortes notifies the Court in writing by November 5, 2025 that she no longer seeks a bond hearing, respondents must, by November 12, 2025, release Galvis Cortes from electronic monitoring under reasonable conditions of supervision unless she has, by that date, been provided with a bond hearing before an immigration judge, at which the government shall bear the burden of justifying her continued detention (including by electronic monitoring), by clear and convincing evidence of dangerousness or flight risk. The Court directs the parties to file

a status report on or before November 17, 2025 that addresses Galvis Cortes' release status, including when she received a bond hearing, the result of that bond hearing, and the findings made by the immigration judge. The stay previously entered by the Court initially on June 6, 2025 and then extended on various dates is extended through November 19, 2025. A telephonic status hearing is set for November 19, 2025 at 8:55 AM, using call-in number 650-479-3207, access code 2305-915-8729.

                                                              _____
                                                              MATTHEW F. KENNELLY
                                                              United States District Judge

Date: November 3, 2025