**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VALENTINA GALVIS CORTES and N.A.,** | ) | |
| **Petitioners,** | ) | |
| **vs.** | ) | **Case No. 25 C 6293** |
| **SAM OLSON, in his official capacity as Chicago Field Office Director for U.S. Immigration and Customs Enforcement, et al.,** | ) | |
| **Respondents.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Valentina Galvis Cortes, a noncitizen, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging her detention by Immigration and Customs Enforcement (ICE).[1] The Court granted her petition and required the government to either remove her from electronic monitoring or provide a bond hearing. The government removed Galvis Cortes from electronic monitoring. Galvis Cortes has moved for an award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The government objects to the motion. For the reasons below, the Court denies Galvis Cortes's motion.

**Background**

Valentina Galvis Cortes is a native of Columbia. She entered the United States

---

[1] The petition was initially filed by Galvis Cortes and her child, N.A. N.A. was released from custody after the petition was filed and no longer sought relief from the Court.

with her husband on February 2, 2022. ICE processed her and issued her a Notice to Appear in standard removal proceedings under 8 U.S.C. § 1229a. In January 2023, Galvis Cortes timely filed an application for asylum based on persecution and continued threats posed by the Aguilas Negras, a violent paramilitary group known for targeting individuals who speak out against the group's control or who participate in political and social resistance movements. She has resided in the United States since she entered the country in 2022.

The initial master calendar hearing for Galvis Cortes's asylum application was held on June 5, 2025. At that hearing, the Department of Homeland Security (DHS) unexpectedly moved to dismiss the proceedings. Immediately after the immigration judge dismissed her removal proceedings, DHS issued an expedited removal order and took Galvis Cortes into custody pursuant to 8 U.S.C. § 1225(b).

The government refused to provide Galvis Cortes with a bond hearing based on the DHS's new interpretation of the mandatory detention statute—section 1225(b). The Board of Immigration Appeals (BIA) upheld this new interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 221 (BIA 2025). Before this decision, the DHS interpreted section 1225(b)'s mandatory detention requirement to apply only to "applicants for admission" who were "seeking admission" at the border. Under the new interpretation, the DHS and the BIA interpreted the "seeking admission" language in section 1225(b) to apply to all noncitizens who were present in the United States and subject to removal proceedings, even if they were not actively seeking admission at the border. *Id.*

Galvis Cortes filed her habeas corpus petition on June 6, 2025. Four days later, Galvis Cortes was released from the detention center but was placed on electronic

monitoring. On November 3, 2025, the Court granted Galvis Cortes's petition and ordered the government to either release her from electronic monitoring with reasonable conditions of supervision or provide a bond hearing. *Galvis Cortes v. Olson*, No. 25 C 6293, 2025 WL 3063636, at *6 (N.D. Ill. Nov. 3, 2025). On November 16, 2025, the parties reported that the government had removed Galvis Cortes's electronic monitoring device. She no longer sought a bond hearing after the removal. The Court ultimately entered judgment in Galvis Cortes's favor.

Galvis Cortes now moves for an award of attorney's fees under the EAJA.

## Discussion

The EAJA provides that a district court shall:

> award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In short, the EAJA stipulates that courts shall award attorney's fees upon a timely application by a party who prevailed against the government if the government's position was not substantially justified, and special circumstances do not make a fee award unjust. *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000).

### A. Sovereign immunity

The government argues Galvis Cortes's immigration habeas petition is not a "civil action" under the EAJA. The parties agree that the court of appeals are divided on this question, and the Seventh Circuit has not yet resolved it.

The Court need not decide the issue. Assuming an immigration habeas petition is a "civil action" under the EAJA, Galvis Cortes is not entitled to attorney's fees because, as discussed below, the government's position was substantially justified.

**B. Substantial justification**

There is no dispute that Galvis Cortes was the prevailing party. That leaves the question of whether the government's position was substantially justified. Galvis Cortes contends that the government's decision to detain her without bond under the expedited removal statute—8 U.S.C. § 1225(b)(1)—was not justified at any point from prelitigation actions through the government's appeal of this Court's decision. The government responds that its position was substantially justified at every step because "reasonable jurists applying the same law" have reached different conclusions. Gov't's Opp. at 6.

The Supreme Court has explained that a position is substantially justified when it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988). "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2. The standard is satisfied if a "genuine dispute" exists or "if reasonable people could differ as to the appropriateness of the contested action[.]" *Id.* at 565. The Seventh Circuit has explained that the government meets its burden to show its position was substantially justified "if: (1) it had a reasonable basis in truth for the facts alleged, (2) it had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts alleged and the theory propounded." *Kholyavskiy v. Holder*, 561 F.3d 689, 691 (7th Cir. 2009).

"In making a determination of substantial justification, the district court must examine the government's conduct in both the prelitigation and litigation contexts." *Hallmark Constr. Co.*, 200 F.3d at 1080. The district court "does not make separate determinations regarding each stage but arrive[s] at one conclusion that simultaneously encompasses and accommodates the entire civil action." *Id.* at 1081. "This global assessment comprehends that the district court will examine not simply whether the government was substantially justified in its position at the beginning or end of the proceedings, but whether the government was substantially justified in continuing to push forward at each stage." *Id.* If the government's position is not substantially justified at some point from the agency action before litigation through the litigation, an award of fees may be appropriate. *Id.* The district court must therefore assess the reasonableness of each government action at the time it was taken to ultimately determine whether "the government's position was substantially justified as a whole." *Gatimi v. Holder*, 606 F.3d 344, 349 (7th Cir. 2010).

The dispute in this case centers on whether the government had a reasonable basis in law for its position, before and during this litigation, that Galvis Cortes was subject to mandatory detention under section 1225(b). The Seventh Circuit recently rejected the government's position and the reasoning in the BIA's decision in *Yajure Hurtado*. *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *4 (7th Cir. July 30, 2026). Judge Sykes dissented from the opinion. *Id.* at *17. The court addressed the parties' statutory interpretation and constitutional arguments at length.

The courts of appeals have since disagreed on whether individuals in Galvis Cortes's position are subject to mandatory detention under section 1225(b) or must be

provided a bond hearing under section 1226(a). The Fifth and Eighth Circuits have found that section 1225(b) applies and thus that individuals in Galvis Cortes's position are subject to mandatory detention without a bond hearing. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have found that section 1226(a) applies and thus that individuals like Galvis Cortes must be given a bond hearing. *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Camos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas*, 2026 WL 2198315; *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden Miami FDC*, 175 F.4th 1258 (11th Cir. 2026).

Galvis Cortes argues that the "overwhelming nature of jurisprudence rejecting" the government's position that the expedited removal statute applied to Galvis Cortes shows that the position was not substantially justified. Mot. at 12. But the question is not how many courts agreed with either party but instead whether reasonable people could reach different conclusions when deciding if the government's action was justified at the time it was taken.

The dispute among the courts of appeals shows that the government's position was substantially justified. Although most courts have rejected the government's position, a few have upheld it on the merits. *See, e.g., Buenrostro-Mendez*, 166 F.4th at 494; *Avila*, 170 F.4th at 1128. And the Seventh Circuit's decision on the issue was not unanimous. *Cirrus Rojas*, 2026 WL 2198315, at *17. The courts have each engaged in a lengthy analysis of the statutory text, structure, history, purpose, and

practice. Based on this detailed review, courts have reached different conclusions. In the Court's view, these decisions reflect that the government had a reasonable basis in law for its new interpretation of section 1225(b) before this litigation began and during the proceedings.

Galvis Cortes points to *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004), as analogous to this case. In *Role Models*, the court found that the agency's position was not substantially justified because the actions it took were "'wholly unsupported by the text' of the applicable regulations." *Id.* (quoting *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 593 (D.C. Cir. 1996)). The court concluded that the agency's failure to comply with the relevant regulations was "so obvious that [the] actions could not 'appear correct to a reasonable person.'" *Id.* (quoting *Trahan v. Brady*, 907 F.2d 1215, 1220 (D.C. Cir. 1990)). The court's decision was based primarily on the view that "the case was easy and the [Secretary's] arguments worthy of little credence, as well as on the [Secretary's] failure to offer any convincing reasons for believing that [his] interpretation of [the regulations] was substantially justified." *Id.* (quoting *Halverson v. Slater*, 206 F.3d 1205, 1212 (D.C. Cir. 2000)).

This case is different. The conflicting decisions addressing the DHS's new interpretation of the relevant statutes reflect that the government's position may have "appear[ed] correct to a reasonable person" when it detained Galvis Cortes based on the BIA's decision in *Yajure Hurtado* and continued to rely on its new interpretation throughout this litigation. *Role Models*, 353 F.3d at 967. Rather than an easy case where the agency's position had no basis in law, the courts have engaged in significant analysis of the text and history of the Immigration and Nationality Act to determine

whether the DHS's new interpretation of the statute was correct.

Galvis Cortes also points to three out-of-circuit district courts that awarded fees in similar cases. In *Salazar v. Noem*, No. 26 C 44, 2026 WL 594606 (D. Neb. Mar. 3, 2026), however, the court did not address the reasonableness standard set forth by the Supreme Court. In *Doe v. Chestnut*, No. 25 C 1372, 2026 WL 1459808 (E.D. Cal. May 22, 2026), the court relied on an independent determination that the Due Process Clause does not permit mandatory detention "without any determinate endpoint" even when section 1225(b) applies to a noncitizen. This Court did not address that question because it concluded that Galvis Cortes was subject to section 1226(a), not 1225(b). In *Orrego Orrego v. Hyde*, No. 26 C 10260, 2026 WL 1480362, at *3 (D. Mass. May 27, 2026), the court based its decision that the government's position was not substantially justified on the fact that the court had previously rejected the same arguments in other cases. *Id.* These decisions are not binding on this Court, and the Court does not find them persuasive.

The government points to two district court cases in the Seventh Circuit in which the courts denied motions for attorney's fees in similar cases. In *Herrera v. Olson*, No. 25 C 1994, 2026 WL 1602258, at *2 (E.D. Wis. June 4, 2026), the court found that the "division within [the Eastern District of Wisconsin] and among courts across the country supports a finding that the government's position was substantially justified." In *Quishpe-Guaman v. Noem*, No. 25 C 211 (S.D. Ind. May 18, 2026), the court noted that when the case was litigated in October 2025, no circuit court had opined on the matter and relatively few cases had been decided by the district courts. The court held that the government's position was substantially justified at the time it was taken based on the

lack of contrary authority at the time the government took the position. *Id.* at 3–4. The present case was litigated around the same time. Galvis Cortes was detained in June 2025, and the Court ultimately granted her petition in November of that year.

Galvis Cortes argues that these decisions are not persuasive here because the courts did not rely on an "independent due process holding." Reply at 7. This argument does not distinguish the cases. The Court's due process discussion in this case relied on its conclusion that section 1226(a) governed Galvis Cortes's detention. It was not an independent basis for relief.

Galvis Cortes also contends that the government's mootness, jurisdictional, and due process arguments were not substantially justified. But courts do not base an EAJA fee determination on whether each individual argument the government presented was substantially justified. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). Instead, the Court must assess the government's conduct as a whole. *Id.* The government's position, at its core, was that section 1225(b) applied to Galvis Cortes and mandated detention without a bond hearing. As discussed, the government's position was substantially justified, even though this Court and many others disagreed.

Galvis Cortes states in her reply that the circumstances surrounding her detention were "objectively abhorrent." Reply at 5. ICE took her into custody in a courthouse hallway after dismissing her pending immigration proceedings to begin removal proceedings and then "detained her in an unknown location, and cut her off from any communication with the outside world under the color of the expedited removal statute." *Id.* at 6. The Court does not condone this conduct, but it does not provide a basis for awarding fees under the EAJA. Galvis Cortes prevailed on the question of

whether she was entitled to a bond hearing under 1226(a), not on a challenge to the conditions of her detention.

Finally, Galvis Cortes argues that the government's appellate conduct "is independently not substantially justified." Reply at 8. Galvis Cortes points to the government's request for an extension of the original deadline for its appellate brief and its failure to timely file the brief after seeking this extension. Galvis Cortes also notes that after she filed a motion to dismiss the appeal, the government filed a cross-motion to hold the appeal in abeyance. But the court of appeals denied the motion to dismiss and granted the government's cross-motion. The government filed its appeal, and engaged in the procedural issues Galvis Cortes challenges, before the Seventh Circuit's decision in *Cirrus Rojas*. Thus these appellate procedural issues do not change the Court's conclusion that the government's position was substantially justified from the time Galvis Cortes was detained through when she filed her motion for attorney's fees.

For these reasons, the Court concludes that the government's position was substantially justified.

**Conclusion**

For the reasons stated above, the Court denies Galvis Cortes's motion for attorney's fees [dkt. no. 64].

MATTHEW F. KENNELLY
United States District Judge

Date: August 17, 2026